IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


KEITH R. WEAVER,                                                  CV 05-1916-MA

        Plaintiff,                                        ORDER AND OPINION

  v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.

    SHARON MAYNARD
    111 SW Fifth Avenue, Suite 1650
    Portland, Oregon  97204

        Attorney for Plaintiff

    KARIN J. IMMERGUT
    United States Attorney
    District of Oregon
    NEIL J. EVANS
    Assistant United States Attorney
    1000 S.W. Third Avenue, Suite 600
    Portland, OR  97204-2902

    JOANNE E. DANTONIO
    Special Assistant United States Attorney
    Social Security Administration
    701 5th Avenue, Suite 2900 M/S 901
    Seattle, WA  98104-7075

        Attorneys for Defendant

Page -1- OPINION AND ORDER

MARSH, J.

## BACKGROUND

Plaintiff, Keith R. Weaver (Weaver), brings this action for judicial review of a final decision of the Commissioner of Social Security denying his applications for disability benefits under Titles II and XVI of the Social Security Act (the Act). The court has jurisdiction under 42 U.S.C. §§ 405(g), 1383(c)(3).

Weaver applied for benefits in May, 2002, alleging disability beginning January 25, 2002 due to degeneration of the left elbow nerve, gas injection of the right thumb, dyslexia, pain, and swollen hands. At the time of his alleged onset of disability Weaver was 41 years old. He has a high school education and past work as a welder, auto body repair person, and truck driver. He last worked as a truck driver in January 2002.

After his applications were denied initially, and upon reconsideration, a hearing was held on March 31, 2005, at which Weaver was represented by counsel. On July 27, 2005, the Administrative Law Judge (ALJ) found Weaver was not disabled because he remained capable of performing a reduced range of light work.

On appeal to this court Weaver alleges the ALJ erred: (1) at step two of the sequential evaluation by failing to find obesity, learning disabilities, and somatoform disorder were among his severe impairments; and (2) by failing to include limitations

Page -2- OPINION AND ORDER

reported by lay witnesses in his residual functional capacity (RFC) assessment.

The Commissioner maintains her decision is supported by substantial evidence and should be affirmed. For the reasons that follow, I concur with the Commissioner, and AFFIRM her decision.

## STANDARD OF REVIEW

The initial burden of proof rests on the claimant to establish disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520, 416.920. The claimant bears the burden of proof at steps one through four. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1512, 416.912. Each step is potentially dispositive.

Here, at step one the ALJ found Weaver had not engaged in substantial gainful activity since his alleged disability onset date. See 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two the ALJ found Weaver had the following impairments, considered "severe" within the meaning of the regulations: borderline intellectual functioning, an adjustment disorder with mixed mood, status post carpal tunnel release, and a back disorder with cervical and lumbar spondylosis. See 20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three the ALJ found Weaver's impairments did not meet or equal the requirements of a listed impairment, codified at 20 C.F.R. Part 404, Subpart P, Appendix 1, considered so severe as to automatically constitute a disability.  See 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

The ALJ determined that Weaver had the residual functional capacity (RFC) to: lift and carry 20 pounds; frequently lift and carry ten pounds; stand and/or walk for six hours in an eight-hour workday; sit for six hours in an eight-hour workday; do unlimited pushing and pulling; do occasional fine and rapid manipulation, and; perform simple, routine tasks with simple, routine instructions.  See 20 C.F.R. §§ 404.1520(e), 416.920(e), 404.1545, 416.945, 404.1567, 416.967.

At step four the ALJ found Weaver could not return to his past relevant work.  See 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

At step five the ALJ found Weaver was able to do other work, existing in significant numbers in the national economy, such as automatic/developer/photographer, cafeteria attendant, and gate guard.  See 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(40(v), 416.920(g).

**DISCUSSION**

**I.  The ALJ's step two determination was based on substantial evidence.**

Weaver contends the ALJ erred at step two of the sequential evaluation by failing to find he suffered from "severe" obesity, learning disabilities, and somatoform disorder, in addition to impairments the ALJ did find to be "severe."

In order to prove an alleged impairment is "severe" the claimant must show (i) that he suffers from a "medically determinable physical or mental impairment," and (ii) that the medically determinable impairment significantly limits his physical or mental ability to do basic work activities.  See 20 C.F.R. §§ 404.1504, 404.1520(c), 416.904, 416.920(c); see also Edlund, 253 F.3d at 1159-60.

To show a "medically determinable physical or mental impairment" the claimant must proffer "medical evidence consisting of signs, symptoms, and laboratory findings," not simply his own subjective statement of symptoms.  20 C.F.R. §§ 404.1508, 416.908.  If the claimant makes such a showing, he must also prove the impairment significantly limits his ability to: walk, stand, sit, lift, push, pull, reach, carry, handle, understand, carry out and remember simple instructions, use judgment, respond appropriately to supervisors, co-workers, and usual work situations, and/or deal with changes in a routine work setting.  20 C.F.R. §§ 404.1521, 416.921.  An impairment is not

Page -6- OPINION AND ORDER

severe if it has no more than a minimal effect on the claimant's ability to do these types of activities.  See SSR 96-3p.

**A.  Obesity**

Weaver alleges the ALJ failed to find his obesity was a severe impairment even though his providers diagnosed him as obese, and he fits the National Institute of Health definition of obesity because he has a Body Mass Index of 30.0 or above.  He argues that the ALJ "failed to perform the required analysis to determine whether [his] obesity more than minimally affected his ability to do work related activities."

Weaver's argument is unpersuasive principally because it seeks to shift the burden of establishing severity onto the ALJ.  As noted above, at step two the burden is on the claimant to proffer objective medical evidence of a medically determinable impairment, as well as evidence that the impairment causes more than minimal work-related limitations.  Although record evidence is sufficient to establish that Weaver is obese[1], no physician indicated that Weaver suffered from more than minimal work-related functional impairments from obesity.

Contrary to Weaver's contention, Social Security Ruling 02-1P does not require the ALJ to order a consultative examination to determine if the claimant suffers from work-related functional

---

[1] A chart note from February 27, 2001, indicates that Weaver weighed 238 pounds, and stood 5 feet, 11 inches tall, resulting in a Body Mass Index of 34.

Page -7- OPINION AND ORDER

impairments any time record evidence suggests a claimant may be obese.  The ALJ's duty to further develop the record is only triggered when the record contains conflicting or ambiguous medical evidence that cannot be resolved by reference to other record evidence.  See 20 C.F.R. §§ 404.1512(e), 416.912(e).  In this case, the record does not contain any indication that Weaver's weight had more than a minimal effect on his ability to perform basic work activities.  Therefore, the ALJ had no duty to inquire further about this possibility.

    **B.**    **Learning Disorder**

According to Weaver the ALJ erroneously failed to credit the diagnosis of "rule out learning disorder," rendered by Geoffrey Bartol, Ph.D., on July 9, 2002, following a one-time consultative examination.  He argues that Dr. Bartol's test results show he has a medically determinable impairment that causes (1) borderline ability to understand and respond to verbally presented material; (2) borderline ability to hold information in memory to perform specific tasks; and (3) borderline ability to process simple or routine visual information quickly and efficiently.

The Commissioner contends Weaver has not met his burden of proving his alleged learning disorder is a medically determinable impairment, or that it causes work-related limitations not already accounted for in the ALJ's RFC assessment.  I concur.

The ALJ credited Dr. Bartol's firm diagnoses of adjustment disorder and borderline intellectual functioning, and concluded that "the record does not support a diagnosis of learning disorders." Indeed, Dr. Bartol's "rule out" diagnosis does not constitute a firm diagnosis sufficient to establish a medically determinable impairment under step two of the sequential evaluation. Nor do the test results Weaver points to show that he suffers from work-related functional impairments due to a learning disorder. While Dr. Bartol's written report does state that Weaver's test results fall in the borderline range with respect to the indexes noted above, these findings do not directly translate into work-related functional limitations. This is nicely illustrated by reference to the residual functional capacity assessment Dr. Bartol also filled out, on which he indicated that Weaver is moderately limited in the following areas: the ability to understand and remember detailed instructions; the ability to carry out detailed instructions, and; the ability to set realistic goals or make plans independently of others.

    Dr. Bartol's assessment of Weaver's RFC was consistent with the RFC assessments of state agency physicians Bill Hennings, Ph.D., and Paul Rethinger, Ph.D., who both assessed Weaver with the ability to understand, remember and carry out short and simple instructions and semi-complex instructions and tasks.

Page -9- OPINION AND ORDER

Thus, as the Commissioner points out, the ALJ's RFC assessment, limiting Weaver to simple, routine tasks with simple, routine instructions, was based on substantial evidence in the record, and did account for the limitations assessed by Dr. Bartol. Accordingly, even if the ALJ had found that Weaver had a severe learning disability at step two, this finding would not have affected his assessment of Weaver's RFC.

### C. Somatoform Disorder

Lastly, Weaver contends the ALJ erred by not finding somatoform disorder[2] was one of his severe impairments. He points to passing references to Weaver's "somatic focus" in the chart notes of Timothy Hill, M.D., who treated Weaver for a work-related left elbow injury, as objective evidence that he has somatoform disorder. Though Dr. Hill is not a psychiatrist and did not evaluate Weaver for mental impairments, Weaver contends these references, coupled with his wife's opinion that he is depressed, constitute "competent evidence in the record that [he] may suffer from somatoform disorder or depression, to the extent that they seriously interfere with [his] ability to function."

---

[2] Somatoform disorder is defined as a mental impairment characterized by the presence of physical symptoms not fully explained by a general medical condition, the direct effects of a substance, or any other mental disorder. See Diagnostic and Statistical Manual of Mental Disorders, 445 (Fourth Edition 1994).

Page -10- OPINION AND ORDER

While the Commissioner properly points out that the ALJ found Weaver's subjective reporting was not credible - a finding Weaver does not challenge - I need not discuss the reasons a diagnosis of somatoform disorder would be subject to question because no such diagnosis exists in the record.  Weaver's own use of the subjective tense illustrates why the ALJ did not err in failing to find severe an impairment that has neither been diagnosed nor shown to cause work-related functional limitations.

**II.  The ALJ's assessment of lay witness testimony is supported by substantial evidence.**

Weaver argues the ALJ erred at step five of the sequential evaluation by failing to credit limitations reported by lay witnesses in assessing his RFC.  It bears noting that if the ALJ provided legally sufficient reasons for rejecting lay witness testimony, such testimony would have no bearing on the adequacy of the ALJ's RFC assessment, or his evaluation at step five.

Lay witness testimony as to a claimant's symptoms or how an impairment affects his ability to work is competent evidence which the ALJ must take into account.  See <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1467 (9th Cir. 1996)(finding the ALJ erred by failing to account for lay witness testimony about a claimant's serious coughing problems); <u>see also</u> <u>Dodrill v. Shalala</u>, 12 F.3d 915, 919 (9th Cir. 1993).  However, medical diagnoses, such as that the claimant has a serious mental impairment as the result of a stroke, are beyond the competence of lay witnesses and therefore

Page -11- OPINION AND ORDER

do not constitute competent evidence. <u>Vincent v. Heckler</u>, 739 F.2d 1393, 1394-95 (9th Cir. 1984); <u>cf</u>. <u>Nguyen</u>,100 F.3d at 1467 (distinguishing lay witness testimony about a claimant's symptoms from testimony involving medical conclusions or diagnoses). The ALJ is required to account for competent lay witness testimony, and if he rejects it, to provide germane reasons for doing so. <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th Cir. 2001).

In this case the ALJ considered the lay witness testimony of two people: Weaver's wife, Karen Weaver, and a state agency interviewer named Terry Willis.

Karen Weaver testified at the hearing on March 31, 2005, to the following: Weaver suffers from shooting pains in his left arm because he was kicked in the left elbow by a bull; Weaver also suffers from daily swelling and loss of dexterity and grip strength in his right thumb because it was injected with gasoline; Weaver frequently drops things as a result of these two injuries; Weaver complains of neck, joint and back pain; Weaver was diagnosed with Fibromyalgia (this claim is not substantiated by the medical record); Weaver has a severe reading disability and cannot read even at a fourth grade level; Weaver cannot sit through a 30-minute television program because he can't sit still or stay focused; Weaver is depressed because he feels like he is worthless; Weaver is still able to do handywork but it takes him much longer than it used to because he can only work for 30 to 40

minutes before needing to rest; Weaver prepares dinner every night, vacuums, mops, cleans the bathroom, does laundry, grocery shops twice a month, occasionally pulls weeds, splits firewood, changes the oil on the family cars, goes hunting and fishing, and paints the inside of his house; Weaver prefers if Mrs. Weaver drives when they drive in Bend, but he drives himself when in Prineville or Redmond.

    The ALJ noted the above testimony, as well as information Mrs. Weaver provided about Weaver's activities of daily living on a June 19, 2002 third party questionnaire. He stated that some of Mrs. Weaver's reports were internally inconsistent, such as that Weaver cannot work for more than 30 to 40 minutes continuously, yet he worked for three to four hours a day as a handyman for an elderly gentleman. Nevertheless, the ALJ generally credited Mrs. Weaver's testimony regarding Weaver's activities.

    Weaver argues the ALJ erred by ignoring many of Mrs. Weaver's reports, such as that due to a gasoline injection injury Weaver has chronic swelling of his right thumb, frequently drops objects, and has great difficultly gripping objects. Though the ALJ did not mention each of them specifically, he stated that he rejected Mrs. Weaver's reports to the extent that they were internally inconsistent. This court reasonably infers that included in the ALJ's rejection of internally inconsistent

reports was Mrs. Weaver's contention that Weaver cannot grip or hold objects due to swelling of his right thumb, which was inconsistent with her other reports that Weaver regularly performs handywork using tools, and is able to do a wide range of housework, including meal preparation.

Notably, some of Mrs. Weaver's reports, such as that Weaver suffers from neck, shoulder, back, hip, knee and ankle pain due to fibromyalgia, are medical diagnoses and conclusions she was not qualified to make.  The ALJ was not required to comment on these statements because they are not considered competent lay witness testimony.

The ALJ also noted the "observations" portion of a disability report, completed by a worker at the state disability determination services office named Terry Willis.  Mr. Willis noted that Weaver could barely read or write, that his wife read all documents to him, that he could not remember his children's dates of birth or how to spell their names, and that Weaver appeared to experience shooting pains in his arm during the interview.  The ALJ rejected Mr. Willis's observations for the germane reason that he found them inconsistent with Weaver's performances during other evaluations, where he was able to provide information about his children's dates of birth and names.

## **CONCLUSION**

Based on the foregoing, the Commissioner's final decision is AFFIRMED and this case is DISMISSED with prejudice.

IT IS SO ORDERED.

DATED this __1__ day of September, 2006.

                                                    /s/   Malcolm F. Marsh
                                                  Malcolm F. Marsh
                                                  United States District Judge